IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAWRENCE CHANCELLOR,

    Plaintiff,                                         No.

v.                                                Hon.

DARRYL JACKSON,

    Defendant.

_____/

OLIVER BELL GROUP
Paul Matouka (P84874)
Attorneys for Plaintiff
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 327-6556
pmatouka@oliverlawgroup.com
notifications@oliverlawgroup.com
_____/

**COMPLAINT AND JURY DEMAND**

**PARTIES**

1. Plaintiff Lawrence Chancellor is a resident of the State of Michigan, County of Wayne.

2. Defendant Darryl Jackson is a resident of the State of Michigan and was, at all times relevant to the allegations in this Complaint, employed by the Detroit Police Department ("DPD").

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as they arise under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events giving rise to this Complaint all occurred within the City of Detroit which lies in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

5. For over twenty years, Mr. Chancellor worked as a taxi driver in and around Detroit.

6. Part of his job as a taxi driver involved waiting for a call for service or being hailed by a pedestrian.

7. Mr. Chancellor would often wait outside the casinos in Detroit, looking for customers who needed transportation services.

8. Over the course of his decades of experience, Mr. Chancellor had often waited in the designated cab waiting areas outside of the casinos without incident.

9. Mr. Chancellor worked as a taxi driver to support his family and put himself through college.

10. In the early morning hours of August 9, 2024, Mr. Chancellor was waiting for customers in the taxi waiting area outside of the Motor City Casino.

11. While he waited for customers, Mr. Chancellor played music on his radio as he had for decades.

12. At approximately 2:43 A.M. a marked DPD police driven by Officer Stinson with Defendant Jackson in the passenger seat pulled up beside Mr. Chancellor's cab.

13. Defendant Jackson informed Mr. Chancellor that the people in the hotel above where he was parked could hear the music.

14. At this point, Mr. Chancellor had already turned off the music Defendant Jackson alleged was too loud.

15. Upon information and belief, there had been no noise complaint made concerning Mr. Chancellor's music.

16. Defendant Jackson said, "BRO, they can hear that, how long do you think I've been working here?"

17. Mr. Chancellor responded "Okay".

18. Defendant Jackson became irate at Mr. Chancellor's response and yelled, "You wanna tell me to go, hold on, man fuck that shit!" and exited his vehicle.

19. At no point during the interaction had, or did, Mr. Chancellor tell Defendant Jackson to go nor did he make any statement to that effect.

20. As Defendant Jackson exited the police cruiser as Officer Stinson exclaimed, "Oh, come on now" in reference to Defendant Jackson agitation and exiting the vehicle.

21. Defendant Jackson then told Mr. Chancellor, "you wanna tell me to go, you check this out, you go. Bye!"

22. After Mr. Chancellor explained that during his approximately twenty years he had never been asked to turn his music down the following exchange occurred:[1]

    Defendant Jackson: Let me explain something to you . . .[2] Okay I'm sixty fucking years old.

    Mr. Chancellor: I'm forty.

    Defendant Jackson: I'm sixty so I got you beat by twenty. So respect that!

    Mr. Chancellor: I'm forty so I'm an elder too.

    Defendant Jackson: So respect that!

23. After informing Mr. Chancellor that "I got dead daughters damn near your age" and hearing that Mr. Chancellor also had daughters, Defendant Jackson

---

[1] Plaintiff's counsel has attempted to capture the conversation in most aspects, but there are overlapping statements make an exact replication difficult.
[2] The ellipsis represents a statement in the audio that is difficult to hear due to overlapping discussion and ambient noise, but makes some reference to Mr. Chancellor's twenty years.

grabbed the open door to Mr. Chancellor's taxi and slammed it shut while saying "go, go, get up out of here, see you by."

24. When Defendant Jackson slammed Mr. Chancellor's door, it caught three of the toes on his left foot in the door.

25. At no point did Mr. Chancellor raise his voice or refuse any command issued by Defendant Jackson.

26. At no point was Mr. Chancellor arrested or asked to step from his vehicle.

27. After obtaining Defendant Jackson's information to allow the filing of a complaint, Mr. Chancellor drove away as directed.

28. It was during the period that Mr. Chancellor was obtaining the relevant information that Officer Stinson attempted to intervene and redirect Defendant Jackson.

29. Officer Stinson's attempts to defuse the situation included asking Defendant Jackson, "can we leave" and "Jackson, at what point are we going to stop all this?"

30. As a result of his foot and toes being slammed in his door, Mr. Chancellor suffered nerve damage in three of his toes on his left foot.

31. Mr. Chancellor suffered significant pain and limitations to his mobility while in the immediate aftermath of the incident.

32. Eventually, Mr. Chancellor required surgery to address the nerve damage in his toes.

33. To this date, Mr. Chancellor can no longer move the three toes independently.

34. The lack of independent control of the toes continues to affect Mr. Chancellor's mobility and balance.

35. Mr. Chancellor's toes are also sensitive to the cold now and cold weather further reduces his mobility.

36. A subsequent investigation by the DPD found sustained Mr. Chancellors allegations of "Force" and "Demeanor" and also found that both Defendant Jackson and Officer Stinson failed to file the appropriate report.

## COUNT I: 42 U.S.C. § 1983 – Excessive Force

37. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

38. There was justifiable basis for Defendant Jackson to exert *any* force against Mr. Chancellor as he was not under arrest or subject to a *Terry* stop.

39. Defendant Jackson slamming the door on Mr. Jackson's foot is an application of force under the Fourth Amendment.

40. Defendant Jackson's application of force was subjectively and objectively unreasonable.

41. Mr. Chancellor suffered significant injuries as a result of Defendant Jackson's conduct.

### COUNT II: 42 U.S.C. § 1983 – First Amendment Retaliation

42. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

43. Defendant Jackson became irate with Mr. Chancellor because he was not obsequious enough.

44. In the alternative, Defendant Jackson became irate at Mr. Chancellor for a perceived hand movement telling him to go.

45. Either act would amount to first amendment protected speech.

46. As a result, Defendant Jackson exited his vehicle, slammed Mr. Chancellor's door on his foot, and ordered him to leave despite lacking any lawful authority to do so.

47. Despite being lawfully parked and not engaged in any criminal activity, Mr. Chancellor obeyed Defendant Jackson's orders and left.

### COUNT III: State Law – Elliot-Larsen Civil Rights Act

48. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

49. The Elliot-Larsen Civil Rights Act prohibits discrimination on the basis of age.

50. Defendant Jackson discriminated against Mr. Chancellor by ordering him to leave, demeaning him, and insulting his education because he felt that the younger man was not providing him, Defendant Jackson, with the respect and deference that he, as the elder deserved.

51. Defendant Jackson's comments and acts were a direct result of Mr. Chancellor's age.

52. Defendant Jackson's conduct deprived Mr. Chancellor of the equal opportunity to continue his work at the location he was.

WHEREFORE, Plaintiff respectfully requests that this Court adjudge and declare that Defendant Jackson violated Plaintiff's rights in the manner set forth above and award him:

a. Nominal, compensatory, punitive, and exemplary damages;

b. Reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988 and MCL 37.2801–37.2802; and

c. Any other relief this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby requests a trial by jury.

Respectfully submitted,

*/s/ Paul Matouka*
Paul Matouka (P84874)
50 W. Big Beaver Rd.
Suite 200

                                                  Troy, MI 48084
                                                  (248) 327-6556
                                                  pmatouka@oliverlawgroup.com
                                                  notifications@oliverlawgroup.com

Dated: December 8, 2025